# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

In re: The Nash Engineering Company,

                                DOCKET NO. 25-2553

      Debtor

_____

G. Denver and Co., LLC,

                Interested Party-Appellant,

The Nash Engineering Company,

                Debtor,

v.

George I. Roumeliotis, the chapter 7 trustee of the bankruptcy
Estate of The Nash Engineering Company, Century Indemnity
Company, the Pacific Employers Insurance Company,

                Appellees.

## APPELLANT'S MEMORANDUM OF LAW
## OPPOSING APPELLEES' MOTION TO DISMISS APPEAL

Henry P. Baer, Jr
Finn Dixon & Herling LLP
Six Landmark Square
Stamford, Connecticut 06901
203-325-5000

*Attorneys for Dovers LLC*

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND......................................................................................3

    A.    TNEC Sells the Policies Back to the Insurers for Allegedly Inadequate Consideration...................................................................................3

    B.    The Trustee Alleges that the Insurance Buyback Agreement Was a Fraudulent Conveyance and Prepares to File Avoidance Claims.........4

    C.    The Trustee and the Insurers Agree to Settle the Trustee's Contemplated Fraudulent Conveyance Claims, and the Trustee Files a Motion to Approve the Proposed Settlement. ......................................5

    D.    Dovers and the U.S. Trustee Object to the Proposed Settlement..........7

    E.    The Trustee Argues the Proposed Settlement Is Both a Proper Settlement of the Fraudulent Conveyance Claims Under Section 9019 and a Permissible *Sale of the Policies* Under Section 363....................8

    F.    The Trustee Files a Revised Proposed Order that Fails to Address the Overbreadth of the Proposed Injunction. ..............................................9

    G.    At Oral Argument, Dovers Argues that the Injunction Is Overbroad Because It Extinguishes the Claims of Third Parties that the Estate Does Not Own and the Trustee Could Never Assert...................................10

    H.    The Trustee Files an Action Seeking to Hold Dovers Liable for the Asbestos Personal Injury Claims as the Successor to, or Mere Continuation of, TNEC. ....................................................................11

    I.    The District Court Approves the Proposed Settlement Over Dovers's Objection. ...................................................................................12

ARGUMENT .......................................................................................................12

    I.    The Purported Sale Was a Settlement Pursuant to Rule 9019(a), Not a Sale Pursuant to Section 363..........................................12

II.     Even if Section 363 Applies, Section 363(m) Does Not Bar this Appeal. ................................................................................16

III.    Dovers's Appeal Is Not Mooted By the Equitable Mootness Doctrine, Which Does Not Apply to Chapter 7 Debtors or Non-Plan Objections. ........................................................................18

CONCLUSION..................................................................................21

ii

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*In re BGI, Inc.*,
    772 F.3d 102 (2d Cir. 2014) ...................................................................................19

*In re Big Apple Volkswagen, LLC*,
    571 B.R. 43 (S.D.N.Y. 2017) ................................................................................13

*In re Boy Scouts of America*,
    137 F. 4th 126 (3d Cir. 2025), *cert. denied sub nom. Lujan
    Claimants v. Boy Scouts of Am.*, No. 25-490, 2026 WL 79599
    (U.S. Jan. 12, 2026) ........................................................................................17, 21

*In re CCX, Inc.*,
    654 B.R. 680 (D. Del. 2023)..................................................................................18

*In re Chateaugay Corp.*,
    10 F.3d 944 (2d Cir. 1993) ..........................................................................2, 19, 20

*In re Coronet Cap. Co.*,
    142 B.R. 78 (Bankr. S.D.N.Y. 1992)....................................................................15

*In re Energy Future Holdings Corp.*,
    949 F.3d 806 (3d Cir. 2020) .................................................................................16

*In re Fridman*,
    2016 WL 3961303 (B.A.P. 9th Cir. July 15, 2016)......................................14, 15

*Harrington v. Purdue Pharma L.P.*,
    603 U.S. 204 (2024)......................................................................................*passim*

*In re Hilsen*,
    122 B.R. 10 (Bankr. S.D.N.Y. 1990)....................................................................15

*In re ICL Holding Co., Inc.*,
    802 F.3d 547 (3d Cir. 2015) .................................................................................17

*In re Karta Corp.*,
    342 B.R. 45 (S.D.N.Y. 2006) ...............................................................................21

i

*In re Kramer*,
  71 F.4th 428 (6th Cir. 2023) ...............................................................20

*In re MF Glob. Inc.*,
  496 B.R. 315 (S.D.N.Y. 2013) .............................................................15

*MOAC Mall Holdings LLC v. Transform Holdco LLC*,
  598 U.S. 288 (2023)..............................................................................16

*Myer's Lawn Care Servs., Inc. v. Fragala*,
  2024 WL 3718666 (E.D.N.Y. Aug. 6, 2024), *aff'd sub nom. In re
  Fragala*, 2025 WL 2837410 (2d Cir. Oct. 7, 2025) ...................................19, 20

*In re PW, LLC*,
  391 B.R. 25 (B.A.P. 9th Cir. 2008) .....................................................15

*In re RE Palm Springs II, L.L.C.*,
  106 F.4th 406 (5th Cir. 2024) ..........................................................17, 19

*In re San Patricio Cnty. Cmty. Action Agency*,
  575 F.3d 553 (5th Cir. 2009) ...............................................................20

*Simmons v. Trans Express Inc.*,
  16 F.4th 357 (2d Cir. 2021) ...................................................................3

*In re SK Foods, L.P.*,
  2011 WL 2709648 (E.D. Cal. July 11, 2011)......................................15

*In re Spanish Peaks Holdings II, LLC*,
  872 F.3d 892 (9th Cir. 2017) ...............................................................16

*In re Weiss Multi-Strategy Advisers LLC*,
  665 B.R. 578 (Bankr. S.D.N.Y. 2024)..................................................13

## Statutes

11 U.S.C. §§ 701-784...................................................................passim

11 U.S.C. § 363 ..............................................................................*passim*

## Other Authorities

Fed. R. Bankr. P. 9019.................................................................*passim*

Appellant Dovers LLC (f/k/a G. Denver and Co., LLC, f/k/a Gardner Denver, Inc.) ("Appellant" or "Dovers") objects to the Motion to Dismiss Appeal filed by Appellees Century Indemnity Company and Pacific Employers Insurance Company (collectively, the "Insurers") and George I. Roumeliotis (the "Trustee" and, collectively with Insurers, the "Appellees") (Dkt. 31.1) (the "Motion to Dismiss").[1]

## INTRODUCTION

Appellees' Motion to Dismiss is premised on the fundamentally flawed assertion that the transaction approved by the District Court was a "sale" pursuant to Section 363 of the Bankruptcy Code, and, therefore, that Section 363(m) applies. That is not the case. The District Court approved a settlement of potential fraudulent conveyance claims by the Trustee against the Insurers pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. Although the order treated the underlying transaction as both a settlement of a fraudulent conveyance action and a sale of assets, Appellant will demonstrate in its merits briefing that it was incorrect to treat that transaction as a sale under Section 363 because the relevant assets had already been sold (surprisingly under the circumstances, that timing is not disputed). Section 363(m) cannot justify dismissing an appeal challenging whether Section 363 applied to the underlying transaction at all—especially where, as here, the property in

---

[1] Appellees' contemporaneous request to defer merits briefing pending resolution of the Motion to Dismiss has been resolved by agreement of the parties.  *See* Dkt. 33.1.

1

question was sold more than five years before the settlement and more than fifteen months before the bankruptcy.

Even if there had been a bankruptcy sale, Section 363(m) would not preclude Dovers's appeal because it does not "affect the validity of a sale." The appeal is focused entirely on the scope of the included injunction, and this Court could grant carefully tailored relief without disturbing any purported 'sale' by either (i) providing that the relevant injunction applies only to claims and causes of action that were estate property, or (ii) requiring the Trustee to offset the value of the insurance coverage the settlement wrongfully enjoined Dovers from pursuing against any judgment the Trustee may obtain against Dovers.

Finally, the doctrine of equitable mootness does not apply to this appeal. Equitable mootness exists to prevent judicially confirmed chapter 11 plans from being unwound; it does not apply to chapter 7 debtors or non-plan objections. Regardless, even if it did apply, an analysis of the factors set forth in *In re Chateaugay Corp.*, 10 F.3d 944, 952–53 (2d Cir. 1993) ("*Chateaugay II*") reveals no basis to hold this appeal equitably moot: in particular, the Court can still grant effective relief by reversing or modifying the scope of the injunction in the District Court's order approving the settlement; such an order would not necessitate unwinding any complex or intricate transactions; and all of the relevant parties are on notice of this appeal.

2

## FACTUAL BACKGROUND

The following facts are drawn from the record and public filings of which the Court can take judicial notice. *See Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021).

### A. TNEC Sells the Policies Back to the Insurers for Allegedly Inadequate Consideration.

In the 1970s and 1980s, Century Indemnity Company's predecessor, California Union Insurance Company, and Pacific Employers Insurance Company (the "Insurers") issued to The Nash Engineering Company ("TNEC" or the "Debtor") four excess liability insurance policies with aggregate indemnity limits of $50 million (the "Policies"). Appellee's Appendix ("Appendix") 003.

When TNEC's primary carrier claimed TNEC's coverage would be exhausted in 2019, TNEC turned to the Insurers for coverage under the Policies. Appendix 003–004. The Insurers pushed back, limiting coverage under certain of the Policies and denying coverage under others. Appendix 004. On or about October 31, 2019, TNEC and the Insurers agreed to an interim funding arrangement under which the Insurers would defend and indemnify TNEC for Asbestos Personal Injury Claims up to $500,000 (the "Interim Agreement") while the parties attempted to negotiate a more complete agreement. The funding level under the Interim Agreement was later increased to $1,350,000. Appendix 004.

3

Negotiations between TNEC and the Insurers culminated in an agreement executed on April 4, 2020 (the "Insurance Buyback Agreement"), under which the Insurers agreed to "buy back" all of their known and unknown policies in exchange for (i) committing to pay the next $14.35 million in defense and indemnity costs for Asbestos Personal Injury Claims, (ii) managing the defense of the claims, and (iii) additional non-monetary consideration. Appendix 004. As of the filing of the bankruptcy petition on October 19, 2021 (the "Petition Date"), the Insurers had paid approximately $11,425,780 in defense and indemnity costs under the Insurance Buyback Agreement. Appendix 004.

On the Petition Date, more than fifteen months after the Insurance Buyback Agreement was executed, TNEC commenced its bankruptcy case by filing a voluntary petition pursuant to chapter 7 of the Bankruptcy Code. Appendix 207. The Trustee was appointed the next day to administer TNEC's bankruptcy estate (the "Estate"). Appendix 003.

### B. The Trustee Alleges that the Insurance Buyback Agreement Was a Fraudulent Conveyance and Prepares to File Avoidance Claims.

Following his appointment, the Trustee determined that the Estate could and should assert claims to avoid the transfer of the Policies to the Insurers under the Insurance Buyback Agreement as an actual and constructive fraudulent transfer (the "Avoidance Claims") and notified the Insurers that he intended to assert those claims. Appendix 007. In subsequent discussions with the Trustee, the Insurers took

4

the position that the contemplated Avoidance Claims have no merit and asserted various factual and legal defenses to those claims. Appendix 218. The Insurers nevertheless agreed to attempt to resolve the Avoidance Claims, along with any other matters involving the Insurers and the Estate, through mediation. Appendix 007.

### C. The Trustee and the Insurers Agree to Settle the Trustee's Contemplated Fraudulent Conveyance Claims, and the Trustee Files a Motion to Approve the Proposed Settlement.

On November 4, 2024, the Insurers and the Estate reached an agreement on the material terms of a settlement, which took the form of an executed "Settlement Stipulation." Appendix 256-276. Under the Settlement Stipulation, all claims asserted by the Trustee against the Insurers were resolved, subject to the Court's approval of a related draft order (the "Proposed Order," and together with the Settlement Stipulation, the "Proposed Settlement"). Appendix 215 at ¶¶ 19, 20; Appendix 277–291. On January 3, 2025, the Trustee filed his Motion to Approve the Proposed Settlement (the "Settlement Motion"). Appendix 204–209.

The Proposed Settlement required the Insurers to pay $9,000,000 to the Estate and contained broad mutual releases and a broad injunction. Appendix 215 at ¶ 20. But the Proposed Settlement went much further, purporting to release and enjoin any *third-party* claims against the Insurers, too. The Proposed Order contained an "Injunction in Aid of Approved Settlement" barring "all persons and entities"—

including third-party "creditors of the Estate"—from asserting "any claim or other liability based upon . . . the Policies" against the Insurers. Appendix 290 at ¶ 6.

The Proposed Settlement purported to justify this sweeping injunction under Section 363 of the Bankruptcy Code, which authorizes a bankruptcy trustee to sell property of the bankruptcy estate free and clear of the interests of any co-owners of the property, subject to certain statutory preconditions. Of course, by November 2025, the Policies were no longer the Trustee's to sell, having been sold back to the Insurers pursuant to the Insurance Buyback Agreement more than a year before the Petition Date and more than five years before the Proposed Settlement was negotiated. Remarkably, in the Settlement Motion, the Trustee asked the District Court to treat the pre-petition sale of the Policies *as if it had occurred during the bankruptcy proceedings*:

> The Insurance Buyback Agreement *will be deemed* assumed by the Estate; the Insurers *shall be deemed* to have purchased, shall hold, and *shall be deemed* to have terminated the Policies free and clear of any interest in the Policies . . . . *In effect*, the Policies are being sold to the Insurers—in a classic "free and clear" sale under the Bankruptcy Code—*confirming* the pre-bankruptcy sale of the policies to the Insurers under the Insurance Buyback Agreement.

Appendix 216 at ¶ 20(d) (emphasis added). The Settlement Motion offered no legal, factual, or equitable basis by which a sale in 2020 could be "deemed" a sale in 2025.

**D.** **Dovers and the U.S. Trustee Object to the Proposed Settlement.**

On March 21, 2025, Dovers filed a Limited Objection (the "Limited Objection") to the Settlement Motion, citing three specific grounds in support. Appendix 293–301. First, Dovers objected that the Proposed Order and Settlement Stipulation purported to authorize the "sale" of the Policies, which, having been sold back to the Insurers five years earlier pursuant to the Insurance Buyback Agreement, were no longer Estate property as of the Petition Date (let alone as of March 2025). Second, the Trustee sought to have the Insurance Buyback Agreement deemed "assumed" by the Estate without providing notice of the terms of that agreement to the parties or the Court. Appendix 296. Finally, Dovers objected to the proposed release and proposed injunction (the "Proposed Injunction") to the extent each would enjoin claims by Dovers against the non-debtor Insurers in contravention of *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 225, 227 (2024). Appendix 298. This final ground was particularly concerning because the Trustee had threatened to file an action to hold Dovers (a third party) liable for the Asbestos Personal Injury Claims as TNEC's alleged successor. Appendix 293–301. Dovers, in turn, would anticipate seeking coverage from the Insurers (a non-debtor) in the extraordinarily unlikely event that Dovers is found to have any liability to the Trustee (which Dovers vigorously denies).

7

The United States Trustee for Region 2 (the "UST") filed a similar objection (the "UST Objection") to the Settlement Motion. *See* Appellant's Appendix ("A-") 001–018. Like Dovers, the UST objected that the Insurance Buyback Agreement had not been shared with the parties or the Court and that the Proposed Settlement purported to release and enjoin third-party claims against the non-debtor Insurers without the consent or approval of the affected third parties. A-001–018.

### E. The Trustee Argues the Proposed Settlement Is Both a Proper Settlement of the Fraudulent Conveyance Claims Under Section 9019 and a Permissible *Sale of the Policies* Under Section 363.

On April 4, 2025, the Trustee filed a reply in further support of the Settlement Motion and in response to the Limited Objection and the UST Objection. A-019-034. First, the Trustee argued, the proposed release of "*the Trustee's fraudulent transfer claim* against the Insurers" was proper—a point neither Dovers nor the UST disputed. A-021 (emphasis added)]. The Trustee then broadened the scope of his argument considerably, defending the non-consensual releases of any *third-party claims* with the remarkable assertion that the Policies—which had been sold back to the Insurers well before the Petition Date—somehow remained property of the Estate, which the Trustee could sell free and clear of any non-party's interest therein under Section 363 of the Bankruptcy Code. A-022.

Notably, the Trustee again offered no legal, factual or equitable basis to "deem" the 2020 sale to have occurred in 2025. To the contrary, the Trustee again

8

acknowledged that "Nash actually disposed of the Policies before the bankruptcy. The Trustee has rights in the Policies only because he claims he could get them back under fraudulent-transfer law." A-030–031.

**F.      The Trustee Files a Revised Proposed Order that Fails to Address the Overbreadth of the Proposed Injunction.**

On April 4, 2025, the Trustee filed a revised settlement stipulation between TNEC and the Insurers (the "Revised Settlement Stipulation") (Appendix 088; 091–104) and a revised proposed order (Appendix 112–29), which was followed on April 7, 2025 by a further revised form of order on the Trustee's Settlement Motion (the "Revised Proposed Order," and together with the Revised Settlement Stipulation, the "Revised Settlement"). A-035–072. The Revised Settlement resolved certain issues raised by Dovers and the UST but did not resolve Dovers's objection that the Proposed Injunction ran afoul of *Purdue* to the extent it purported to enjoin third-party claims against the Insurers. Appendix 008.

More importantly for the purpose of the current Motion to Dismiss, the Trustee and the Insurers doubled down on their counterfactual insistence that the Policies were being sold *in bankruptcy*. In the Revised Settlement Stipulation, the Trustee and the Insurers "stipulated" that:

> as of the Closing,[] (i) the Policies shall be sold to the Insurers free and clear of all liens, claims, and other interests pursuant to Section 363(b) and (f) of the Bankruptcy Code and free and clear of any claims of any person or entity for insurance coverage under the Policies.

9

Appendix 136 at ¶ 2(b). In turn, the Revised Proposed Order mirrored those stipulations in several *new* counterfactual "findings of fact" and untenable conclusions of law. Appendix 56–57; 59 at ¶¶ G, M(ii).

Recognizing that the Revised Settlement assumed non-existent "facts," the Trustee asked the District Court to *"deem"* the prepetition sale of the Policies to be a postpetition sale of "Estate property" that could be sold free and clear of Dovers's interest:

> [T]he Insurers shall *be deemed* to have purchased, shall hold, and *shall be deemed* to have terminated the Policies free and clear of any interest in the Policies or their proceeds held by the Estate or any holder of any Asbestos Personal Injury Claim or any other person or entity for coverage or other rights under the Policies.

A-069 at ¶ 4 (emphasis added).

> **G.    At Oral Argument, Dovers Argues that the Injunction Is Overbroad Because It Extinguishes the Claims of Third Parties that the Estate Does Not Own and the Trustee Could Never Assert.**

On June 16, 2025, the District Court held a hearing on the Settlement Motion and Dovers's Limited Objection to the Proposed Settlement. Dovers's counsel explained that Dovers's "fundamental objection" is that the Proposed Settlement "seek[s] to release and enjoin claims that don't belong to the [E]state. . . ." A084–085 at 12:23–13:4. Dovers's claims, counsel argued, could not be released under *Purdue*, "especially in a 9019 motion." *Id.* Counsel identified two problems with the

10

Trustee's attempt to "deem" the Policies to be Estate property that could be sold free and clear of Dovers's interest under Section 363 of the Bankruptcy Code:

> First of all, this is not a motion under 363 to sell assets; this is a motion under [Section] 9019 [to approve a proposed] settlement of an avoidance claim. . . . [Second,] I don't believe that [the Trustee] can retroactively apply 363 to a sale that [the Trustee] assert[s] happened five years ago.

A-119–120 at 47:17–48:16. In any event, Dovers's counsel argued, among other things, that this was not a proper asset sale under Section 363 because the Trustee had not "satisfied [his] statutory obligation[]" to offer "adequate protection" of Dovers's interest in the Policies. A-122 at 50:4–11; A-124–125 at 52:24–53:3.

### H. The Trustee Files an Action Seeking to Hold Dovers Liable for the Asbestos Personal Injury Claims as the Successor to, or Mere Continuation of, TNEC.

On June 23, 2025—after all briefing on the Settlement Motion and on Dovers's Limited Objection thereto had been submitted, and after the District Court heard oral argument on the same—the Trustee brought suit against Dovers in the United States District Court for the District of Connecticut on a theory of successor liability (the "Successor Liability Action").[2]

---

[2] Although not relevant to this appeal, Dovers vigorously contests successor liability for multiple reasons.

I. **The District Court Approves the Proposed Settlement Over Dovers's Objection.**

On September 25, 2025, the District Court granted the Trustee's Settlement Motion, entered its Ruling on Motion to Approve Compromise with Century Indemnity Company and Pacific Employers Insurance Company (Appendix 002-020, the "Ruling"), and signed the Revised Proposed Order (Appendix 022-038, the "District Court Order"), and overruled Dovers's Limited Objection. Appendix 019.

Most significantly to the Motion to Dismiss, the District Court acknowledged that "[TNEC] disposed of the policies before the bankruptcy." Appendix 018. And though the Trustee had never even *filed* a fraudulent transfer action against the Insurers, let alone prevailed in one, the District Court held that "[t]he Trustee has rights in the Policies *only* because of the fraudulent transfer powers of bankruptcy law." Appendix 016 (emphasis added).

Notwithstanding those fundamental acknowledgments, the District Court approved the Settlement pursuant to Section 363 of the Bankruptcy Code (and Rule 9019), without properly grappling with the undisputed fact that the Policies had already been sold in 2020. Appellant timely noticed this appeal.

## ARGUMENT

I. **The Purported Sale Was a Settlement Pursuant to Rule 9019(a), Not a Sale Pursuant to Section 363.**

The fundamental question before this Court for this Motion to Dismiss is whether the Appellees can "deem" a sale that closed in 2020 to be a sale in 2025 and

12

thereby invoke Section 363(m) to preclude appellate review of the Approval Order below. The answer is "no", because the Settlement Motion was, in both substance and function, a motion to approve a settlement under Bankruptcy Rule 9019, not a sale under Bankruptcy Code Section 363.

Federal Rule of Bankruptcy Procedure 9019 provides that upon a motion by a trustee, notice to certain interested parties, and a hearing, the bankruptcy court "may approve a compromise or settlement." *See* F.R.B.P. 9019(a). Rule 9019 settlements typically involve the trustee settling a potential claim the estate has against another party or settling a potential claim the other party has against the estate. *See, e.g., In re Big Apple Volkswagen, LLC*, 571 B.R. 43, 52–58 (S.D.N.Y. 2017). In contrast, Bankruptcy Code Section 363 states that upon notice and a hearing, a trustee "may . . . sell . . . property of the estate," as long as certain conditions are met. *See* 11 U.S.C. § 363(b)(1). Typically, a Section 363 sale involves an auction in which bids are placed on the property in question. *See In re Weiss Multi-Strategy Advisers LLC,* 665 B.R. 578, 590 (Bankr. S.D.N.Y. 2024).

The gravamen of Appellees' Motion is that a good-faith sale of Estate property under Section 363(b) cannot be challenged on appeal unless it was first stayed pending appeal. Dkt. 31.1 at 11. No such prohibition on appeals exists for Rule 9019 settlements. Knowing this, Appellees have attempted to characterize their agreement as both a Section 363 sale and Rule 9019 settlement. But as has been

13

explicitly recognized *by the Appellees* throughout the pleadings and in the oral argument, and by the District Court in the Approval Order, the "Policies" that the Trustee sought to "sell" had already been sold in 2020 pursuant to the Insurance Buyback Agreement in exchange for $14.35 million and non-cash consideration. In fact, the Trustee did not even suggest that he was "selling" the Policies (again) until his Reply, seeking in the Settlement Motion only to "confirm" the 2020 sale and to "assume" the Insurance Buyback Agreement. Even in the Reply, the Trustee explicitly acknowledged that "*Nash actually disposed of the Policies before the bankruptcy. The Trustee has rights in the Policies only because he claims he could get them back under fraudulent-transfer law.*" A-030-031 (emphasis added).

Appellees cannot expand the permissible scope of non-debtor relief by attaching a Section 363 label to a compromise and then invoking Section 363(m) to insulate that compromise from appellate review. *See, e.g.*, *In re Fridman*, 2016 WL 3961303, at **5–6 (B.A.P. 9th Cir. July 15, 2016) (rejecting appellee's argument that Section 363(m) mooted appeal related to a "transaction presented as a sale that is in substance a settlement under Rule 9019"); *In re PW, LLC*, 391 B.R. 25, 36 (B.A.P. 9th Cir. 2008) (Section 363(m) inapplicable where underlying transaction was not a sale or lease); *In re MF Glob. Inc.*, 496 B.R. 315, 320 (S.D.N.Y. 2013) (same); *In re SK Foods, L.P.*, 2011 WL 2709648, at **4–5 (E.D. Cal. July 11, 2011) (rejecting trustee's argument that Section 363(m) mooted appeal of 9019 settlement)

14

("The order appealed from . . . grants a Rule 9019 motion to approve a settlement. Section 363(m) mootness does not, by its terms, apply to orders approving compromises, it applies to orders granting Section 363(b) or (c) motions to sell assets.").[3] Under the traditional rule that substance controls over form, the transaction below is properly a Rule 9019 settlement, and Section 363(m) does not bar the Appeal. *See, e.g.*, *In re Coronet Cap. Co.*, 142 B.R. 78, 82 (Bankr. S.D.N.Y. 1992) ("Finally, although the parties can call a document a 'loan participation agreement,' we are not obliged to make a holding that exalts substance over form."); *In re Hilsen*, 122 B.R. 10, 13 (Bankr. S.D.N.Y. 1990) (recognizing that "the bankruptcy court must look to substance over form" in a chapter 7 case).

Section 363(m) presupposes a valid Section 363 sale; it does not bar appellate review directed to whether Section 363 applies at all. To hold otherwise would make Section 363(m) a self-insulating device whenever a party can obtain a "sale" label and close quickly. The law does not countenance that result.

---

[3] As the case law recognizes, part of the reason that Rule 9019 does not include a parallel provision to Section 363(m) is that Section 363(m)'s purpose is only relevant to sales of estate property, not to settlements of claims. *See In re Fridman*, 2016 WL 3961303, at *5 ("[W]hile § 363(m) applies to sales, no comparable provision applies to settlements under Rule 9019. Further, applying § 363(m) to settlements would not further that subsection's purpose. Section 363(m) is intended to increase the confidence of purchasers in bankruptcy sales and then encourage them to buy estate assets for higher prices . . . This purpose is not directly related to settlements.").

## II.     Even if Section 363 Applies, Section 363(m) Does Not Bar this Appeal.

Even if the Court assumes *arguendo* that the Settlement can be treated as a Section 363 sale, Section 363(m) still would not warrant dismissal. Section 363(m) protects the finality of completed sales to good-faith purchasers by limiting appellate remedies that would "affect the validity" of an unstayed sale. 11 U.S.C. § 363(m). It is not a jurisdictional bar; rather, Section 363(m) only limits an appellate court's ability to provide relief. *See MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 297–303 (2023) (holding Section 363(m) is non-jurisdictional and limits only the relief available); *see also In re Energy Future Holdings Corp.*, 949 F.3d 806, 820–21 (3d Cir. 2020) (recognizing that Section 363(m) "forbids only those appeals that affect the validity of a sale"); *In re Spanish Peaks Holdings II, LLC*, 872 F.3d 892, 896 n.4 (9th Cir. 2017) (rejecting argument that case is moot because "[b]y its terms, section 363(m) preserves the validity of a sale challenged on appeal" and appellants "have not asked us to undo the sale").

Here, the court is capable of affording relief to appellants that would not disturb the "sale's" validity, thereby not triggering any bar under Section 363(m). *See In re RE Palm Springs II, L.L.C.*, 106 F.4th 406, 412–14 (5th Cir. 2024) (relief "affects" a sale only if the challenged term is integral to sale's validity). For example, in *In re Boy Scouts of Am.*, the Third Circuit found that the confirmation order and plan at issue violated *Purdue* because they released and enjoined claims of various

16

non-settling appellants. *In re Boy Scouts of America*, 137 F. 4th 126, 142, 168–69 (3d Cir. 2025), *cert. denied sub nom. Lujan Claimants v. Boy Scouts of Am.*, No. 25-490, 2026 WL 79599 (U.S. Jan. 12, 2026). Although the Third Circuit dismissed the appeals of one group of appellants (the Lujan and D&V Claimants) who sought the wholesale reversal of the confirmation order and plan—holding that Section 363(m) barred such relief—it did not dismiss the appeal of a different group (the "Allianz Insurers"), who sought "relief sufficiently collateral to the Insurance Policy Buyback" such that their "appeals avoid[ed] triggering § 363(m)." *Id.* at 150–58. For that group, the Third Circuit granted relief in the form of a setoff requiring the Settlement Trustee to pay the released claims to the extent they accrue. *Id.* at 151, 169;[4] *see also In re ICL Holding Co., Inc.*, 802 F.3d 547, 554 (3d Cir. 2015) (holding that reallocating purchase funds among creditors in a case where the federal government contested the distribution of debtor escrow funds did not affect the validity of the sale); *In re CCX, Inc.*, 654 B.R. 680, 691–93 (D. Del. 2023) (granting

---

[4] The Allianz Insurers argued that the Confirmation Order "impermissibly release[d] contribution and indemnity claims they would otherwise have against the Settling Insurers." *Id.* at 151. The estate had sold certain insurance policies to the Settling Insurers, purportedly free and clear of the claims of the estate and all others (including the Allianz Insurers), for purposes of funding a settlement trust to pay distributions to abuse claimants. *Id.* at 142. As the court found, this violated *Purdue*, because the Allianz insurers had not consented to having their claims released. *Id.* The violation was remediable on appeal despite Section 363(m), because the compensation needed to cure the violation came from the settlement trust, not the Settling Insurers.

relief where vacating injunction would not affect purchaser's ownership or sale integrity).[5]

In the alternative, the Court could provide that the injunction included in the Sale Order applied only to claims and causes of action that belonged to the Estate – language that has already been consensually added to the releases in the District Court Order ("For the avoidance of doubt, such release shall not … include any claim that is not property of the Estate."). Appendix 036-037.

Either way, if the Court finds that the transaction at issue was a Section 363 sale, carefully tailored relief can and should be awarded here.

### III. Dovers's Appeal Is Not Mooted By the Equitable Mootness Doctrine, Which Does Not Apply to Chapter 7 Debtors or Non-Plan Objections.

Appellees also assert (without explaining) that "Dovers' failure to seek a stay of the Orders is fatal to its appeal" because it would be "inequitable" to undo the sale of the Policies after that sale has been consummated. Dkt. 31.1 at 19. But equitable mootness is only properly asserted to prevent judicially confirmed chapter 11 plans from being unwound, not to insulate Rule 9019 settlements from review.

The equitable mootness doctrine was crafted to increase certainty in the wake of chapter 11 plan confirmations. *In re BGI, Inc.*, 772 F.3d 102, 109 (2d Cir. 2014)

---

[5] Here, such relief would take the form of a credit against any judgment obtained by the Trustee against Dovers that, but for Appellees' *Purdue* violation, otherwise would have been covered under the Policies issued by the Insurers.

18

("[T]he doctrine of equitable mootness and the corresponding *Chateaugay* analysis apply in assessing appeals related to Chapter 11 liquidation proceedings as well as Chapter 11 reorganizations."). Accordingly, Appellees' reliance on cases like *In re MPM Silicones, L.L.C.* is misplaced. 874 F.3d 787 (2d Cir. 2017). Appellees correctly note that the court in *MPM Silicones* placed particular emphasis on the importance of the fifth *Chateaugay II* factor—whether appellant diligently sought a stay—in its equitable mootness analysis. *Id.* at 804. Crucially, however, Appellees fail to mention that in *MPM Silicones* the court focused on whether the appellant had diligently sought a stay of the *order confirming debtor's reorganization plan*, not a stay of a mere settlement order like the one at issue here. *Id.* at 804–05. This distinction is key. As the *MPM Silicones* court noted, "[e]quitable mootness issues only arise in earnest following a judicial determination *that some facet of a reorganization plan violates the Code*." *Id.* at 805 (emphasis added); *accord Myer's Lawn Care Servs., Inc. v. Fragala*, 2024 WL 3718666, at *2, n.4 (E.D.N.Y. Aug. 6, 2024) (holding in a chapter 7 proceeding that "[t]he doctrine of 'equitable mootness' is not applicable here"), *aff'd sub nom. In re Fragala*, 2025 WL 2837410 (2d Cir. Oct. 7, 2025). As Dovers is not challenging any facet of Nash's chapter 7 liquidation, the doctrine of equitable mootness does not apply to its appeal.

Moreover, at least one other Circuit Court of Appeals has held that "the doctrine of equitable mootness has no place in Chapter 7 liquidations" at all. *In re*

19

*Kramer*, 71 F.4th 428, 452 (6th Cir. 2023) (reasoning that "the characteristics of a Chapter 7 liquidation" are "far too distinct from the doctrine's rationale and its scope" to apply in a chapter 7 context); *see also In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 559 (5th Cir. 2009). The Second Circuit has never applied the doctrine of equitable mootness in the chapter 7 context, and Appellant respectfully submits that the facts presented here do not compel such a novel approach. *See Myer's Lawn Care*, 2024 WL 3718666 at *2, n.4.

In any event, the five equitable-mootness factors[6] weigh in favor of allowing the appeal to proceed. First, the Court can grant complete, practical relief by protecting Dovers against the improper enjoining of its claims against the Insurers— even if the only way to do so is by requiring the Trustee to provide a credit against any judgment against Dovers. Second, there would be no impact on reorganization in this chapter 7 liquidation context because there is no "re-emergence of the debtor as a revitalized corporate entity" to impair. *Id.* at 953. Third, the requested relief would not "unravel intricate transactions" and "knock the props out from under the authorization for every transaction that has taken place." *Id.* Indeed, relief along the lines ordered for the Allianz Insurers in *Boy Scouts* would not unravel the transaction at all. Fourth, all parties who could conceivably be affected by a narrowing of the non-debtor provisions had notice of the Limited Objection, the approval

---

[6] *See In re Chateaugay Corp.*, 10 F.3d 944, 952–53 (2d Cir. 1993).

20

proceedings, and this appeal, and have been active participants at every stage. *Id.* Fifth, Appellant acted diligently in objecting and pursuing this appeal. *Id.*

Appellees' reliance on the absence of a stay is misplaced, because the absence of a stay does not create equitable mootness where effective relief remains available. "[T]he Second Circuit has held that seeking a stay is not a necessary precondition to avoiding dismissal on the ground of equitable mootness." *In re Karta Corp.*, 342 B.R. 45, 53 (S.D.N.Y. 2006).

## **CONCLUSION**

For the foregoing reasons, Appellant respectfully requests that the Motion to Dismiss be denied.

Appellant requests oral argument on the Motion to Dismiss.

Dated: January 22, 2026

Respectfully submitted,

**FINN DIXON & HERLING LLP**

By: /s/ Henry P. Baer, Jr.
     Henry P. Baer, Jr. (ct27781)
     **FINN DIXON & HERLING LLP**
     Six Landmark Square
     Stamford, CT 06901-2704
     Tel: (203) 325-5000
     Fax: (203) 325-5001
     E-mail hbaer@fdh.com

*Attorneys for Dovers LLC, f/k/a G. Denver and Co., LLC, f/k/a Gardner Denver, LLC, f/k/a Gardner Denver, Inc.*

22

23

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this opposition meets the requirement of Rule 27 of the Federal Rules of Appellate Procedure because it contains 5,111 words (excluding, pursuant to Rule 37(f) of the Federal Rules of Appellate Procedure, the cover page, the tables of contents and authorities, the signature blocks, this certificate and the certificate of service), fewer than the 5,200 words permitted by the Rule.

Dated: January 22, 2026

Respectfully submitted,

By: <u>Henry P. Baer, Jr.</u>
     Henry P. Baer, Jr.

23

## CERTIFICATION OF SERVICE

I hereby certify that I served the foregoing opposition on January 22, 2026

(i) through the Court's CM/ECF system and (ii) by email on the following counsel:

Jeffrey M. Sklarz, Esq.
Robert Fleischer, Esq.
Green & Sklarz LLC
One Audobon Street, 3rd Floor
New Haven, Connecticut 06511
jsklarz@gs-lawfirm.com
rfleischer@gs-lawfirm.com

Mark D. Plevin, Esq.
Plevin & Turner LLP
580 California Street, Suite 1200
San Francisco, California 94104
mplevin@plevinturner.com

Irve Goldman, Esq.
Kristin B. Mayhew, Esq.
Pullman & Company, LLC
850 Main Street, 8th Floor
P.O. Box 7006
Bridgeport, Connecticut 06601
igoldman@pullman.com
kmayhew@pullman.com

/s/ Henry P. Baer, Jr.
Henry P. Baer, Jr. (ct27781)
Finn Dixon & Herling LLP
Six Landmark Square
Stamford, CT 06901
Tel. (203) 325-5000
Email: hbaer@fdh.com

24